UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERMAN R. PALENCIA,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-01058-DJC-CSK

ORDER

Petitioner is a native and citizen of Guatemala who is presently in the custody of Immigration and Customs Enforcement ("ICE"). The Court previously adopted the Magistrate Judge's Findings and Recommendations (ECF No. 13) granting Petitioner's Petition for Writ of Habeas Corpus. (Prior Order (ECF No. 15).) The Court ordered that Petitioner be afforded a bond hearing before a neutral decisionmaker at which the Government had to demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. (Prior Order at 2.) Respondents filed a Notice of Appeal (ECF No. 26) in June 2026 but have not sought a stay of this Court's order, and do not contend the appeal precludes the Court's review of the instant Motion. (*See* Opp'n (ECF No. 33) at 1 n.1.)

A bond hearing was held on April 16, 2026, at the conclusion of which the Immigration Judge found that the Government had met its burden in demonstrating, by clear and convincing evidence, that Petitioner was a danger to the community and a flight risk. (IJ Decision (ECF No.17-1).) Petitioner now argues that the hearing provided was insufficient to satisfy his due process rights. (Mot. (ECF No. 29).) Petitioner requests that this Court find that the April hearing provided was not in compliance with the Court's order and order a new hearing. (*Id.* at 11–12.) Respondents oppose Petitioner's motion.

**LEGAL STANDARD**

The Court has jurisdiction to enforce its own orders. *See Sub-Zero, Inv. v. Wasserman*, No. 2:18-cv-00428-JFW-MAR, 2025 WL 1111551, at *3 (C.D. Cal. March 27, 2025); *see also Agtuca v. Reed*, No. 86-cv-00331-RHW, 2006 WL 2009050, at *2 (E.D. Wash. July 17, 2006). When reviewing an immigration custody determination in habeas proceedings, the district court must apply an abuse of discretion standard. *Martinez*, 124 F.4th at 784 ("When questions require a close review of agency-found facts, like the 'dangerousness' determination [in an immigration custody hearing], we review for an abuse of discretion."). However, "due process claims and questions of law raised in immigration proceedings are reviewed de novo." *Manjinder S. v. Chestnut,* No. 1:26-cv-01892-TLN-SCR, 2026 WL 1998603, at *2 (E.D. Cal. July 10, 2026) (citing *Singh v. Holder,* 750 F.3d 1120, 1127 (9th Cir. 2014)).

**DISCUSSION**

Petitioner argues that he was deprived of a meaningful opportunity to be heard during the bond hearing because of (1) recurring remote-connectivity failures that disrupted the presentation of testimony; (2) materially deficient interpretations; and (3) a failure to accommodate Petitioner's hearing impairment. Respondents contend that the bond hearing complied with the Court's Prior Order and deny that the identified issues prejudiced Petitioner.

////

## I. Administrative Exhaustion

Respondents argue that Petitioner's arguments related to the adequacy of his bond hearing should be raised with the BIA. (Opp'n at 2–3.) While the habeas statute itself, 28 U.S.C. § 2241, does not require exhaustion, *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004), "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241[,]" *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2004). Here, the Court finds that waiver of exhaustion is proper. *See Bayani v. LaRose*, No. 26-cv-0266-JES-VET, 2026 WL 1270059, at *4–5 (S.D. Cal. May 8, 2026) (excusing the exhaustion requirement for purposes of reviewing compliance with the court's prior order for a bond hearing and collecting cases).

## II. Sufficiency of Bond Hearing

### A. The Court's Prior Order

Respondents also argue that Petitioner's Motion should be denied because Petitioner does not identify any failure to comply with the express terms of this Court's Prior Order. (Opp'n at 2.) In the Prior Order, the Court did not determine the precise scope of the hearing that would conform with due process but required that that the Government bear the burden of establishing by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight. (Prior Order at 2.) According to Respondents, the fact that Petitioner was provided a timely hearing before a neutral decisionmaker with the burden placed on the government satisfies this Court's previous direction. However, whether Petitioner was able to understand and participate in the hearing ordered by this Court is within the scope of the Prior Order. *See Hernandez v. Sessions,* 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

////

////

**B. Whether Petitioner was Granted a Full and Fair Hearing**

Turning to the merits of Petitioner's claim, the Court finds that Petitioner has not established a due process violation. "[T]o prevail on a due process claim that he was denied a full and fair hearing, a[] [noncitizen] must also show prejudice—that his rights were violated in a manner so as potentially to affect the outcome of the proceedings." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926 (9th Cir. 2007).

First, Petitioner has not demonstrated that the connectivity issues infringed on his due process rights. Although there were connectivity issues throughout the proceeding, particularly between the Immigration Judge and the interpreter, both the Immigration Judge and the interpreter were communicating about what information needed to be repeated and at no point does it appear that any party lost access to the proceeding. To the extent that Petitioner argues that the hearing failed to comply with the Executive Office of Immigration Review's guidance on internet-based hearings, the Court disagrees. *See* Exec. Off. For Immigr. Rev., U.S. Dep't of Just., Dir's Mem. 22-07, *Internet-Based Hearings*, 2022 WL 21470624 (Aug. 11, 2022). At the outset of the bond hearing, the Immigration Judge asked Petitioner if he could hear and understand the Immigration Judge, and told Petitioner that if he could not understand what was happening during the proceeding, he should immediately inform the Immigration Judge. Petitioner answered affirmatively to all of those instructions. Petitioner also did not identify any point in the hearing where he was unable to participate due to connection issues. Thus, the connection issues were not prejudicial.

Second, Petitioner has not demonstrated that his hearing impairment prevented him from meaningful participation in the bond hearing. Petitioner's hearing issue was mentioned around the middle of the bond hearing, after Petitioner was asked about whether he attended school in the United States. Petitioner stated, "I have hearing problems, that is why I request an interpreter. . .I can write about 90% and speak perhaps 80%, but because I cannot hear well, that is why I request an

interpreter." (Mot. at 6.) Petitioner argues that pursuant to Section 504 of the Rehabilitation Act the Immigration Judge was to take affirmative steps to ensure Petitioner could meaningfully participate. However, the audio recording does not demonstrate that Petitioner was unable to meaningfully participate. Rather, Petitioner responded to all of the questions and does not adequately explain what he was unable to hear during the proceeding.

Finally, Petitioner has not shown that incompetent translation infringed on his due process rights. Respondents do not dispute that competent translation is fundamental to a full and fair hearing because a noncitizen must be able to understand the questions posed to him and communicate his answers to an Immigration Judge. *See Perez-Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2000). In evaluating incompetent translation claims, courts may consider direct evidence of incorrectly translated words, circumstantial evidence of unresponsive answers by the witness, and a witness's expression of difficult understanding what is said to him. *Id.*

Here, Petitioner identifies three instances during the bond hearing that he argues demonstrate incompetent translation, which appear to be linked at times to the connectivity issues. (Mot. at 6–8.) The first instance involved the interpreter's incorrect translation of the question "when did you first start living in the United States," which he translated as "why" Petitioner began living in the United States. (*Id.* at 6.) However, the Immigration Judge herself caught the error, and the question was repeated correctly. (*Id.*) The second instance involved the interpreter being unable to hear part of the Immigration Judge's question asking whether Petitioner had attended school in the United States. (*Id.*) The interpreter was unable to hear the word "school" and asked the Immigration Judge to repeat herself. (*Id.* at 6–7.) The question was eventually asked, and during Petitioner's reply, the interpreter stated that he did not understand the response and had Petitioner repeat himself. (*Id.*) The final instance occurred after the Immigration Judge asked Petitioner whether there was anything else he wanted the Immigration Court to know about why Petitioner was not a danger

to the community. (*Id.* at 7.) Petitioner argues that the interpreter altered the substance of Petitioner's answer about wanting to donate a kidney to his mother but was unable to do so because he was incarcerated to being unable to say goodbye to his mother before she passed away. (*Id.*) Petitioner contends that this mistranslation was material because it bore directly on remorse, rehabilitation, family responsibility, and more. (*Id.*)

The Court does not consider the error that was corrected by the Immigration Judge. However, even considering the other two issues flagged by Petitioner, the Court does not find that he was prejudiced. There is no indication that Petitioner did not understand the substance of the questions asked, nor did he express any issue with the translation itself. *See Perez-Lastor,* 208 F.3d at 779 (finding incompetent translation where the Petitioner "never understood some questions, despite repeated questioning" and "repeatedly expressed difficulty understanding the translation"). Nor were there large portions of substantive conversation that remained untranslated. *See Mangue v. Blanche,* No. 2:26-cv-00586-CDS-DJA, 2026 WL 1602517, at *4 n.10 (D. Nev. June 4, 2026) (finding a constitutional violation occurred where only part of the proceeding was translated).

Accordingly, the Court does not find that Petitioner was denied a meaningful opportunity to be heard on the question of his detention.

## CONCLUSION

For the reasons discussed above, the Court DENIES Petitioner's Amended Motion to Enforce (ECF No. 29).

IT IS SO ORDERED.

Dated: **August 6, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – Palencia26cv01058.mte_v1